# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        **Plaintiff,**

v.                                **CIV. No. 97-641 JP/DJS**

ROY DEE WALKER and SHELLIE
ANN WALKER, husband and wife,

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

The subjects of this Order are the plaintiff's Motion to Dismiss Counterclaim in Part for Lack of Jurisdiction [Doc. No. 10], filed August 26, 1997, the defendants' Motion to Dismiss [Doc. No. 14], filed October 7, 1997, and the plaintiff's Motion for Summary Judgment [Doc. No. 17], filed October 8, 1997.

Defendants are ranchers who graze their cattle on land within the Gila National Forest on a parcel known as the Cold/Hot Springs allotment. Federal laws and regulations require individuals who wish to use National Forest System lands for grazing to obtain a permit. The defendants obtained a permit under which they grazed their cattle for some time. In 1996 their permit was revoked. However, after revocation of their permit the defendants continued to graze their cattle on the Cold/Hot Springs allotment. Plaintiff then brought this action against defendants for trespass, requesting damages and injunctive relief.

Defendants argue that the United States has no authority to regulate their grazing

1

activities because they hold title to the Cold/Hot Springs allotment by virtue of the "split estate system."  Defendants contend that, under this "system," the federal government gave away surface rights to the allotment and other lands while retaining only the mineral rights.  Thus, argue the defendants, the government has no authority to manage the use of those lands.

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to secure the just, speedy and inexpensive determination of every action.  Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986) (quoting Fed. R. Civ. P. 1).  A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits, show that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).  Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, Harsha v. United States, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 325, 106 S.Ct. at 2554.  In such a situation, the moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  Celotex, 477 U.S. at 323, 106 S.Ct. at 2552.

2

There appears to be no genuine issue of material fact in dispute in this case.  Defendants acknowledge that they "do not presently hold a valid Forest Service permit authorizing them to use or occupy any portion of the Gila National Forest for grazing or livestock purposes." Complaint at ¶32; Answer and Counterclaim at ¶32.  However, defendants "deny the fact that they need [a permit] authorizing them to use or occupy any portion of their allotment, and further deny that their allotment is part of the Gila National Forest."  Answer and Counterclaim at ¶32. The only issue that remains is a legal one: whether the United States has created a "split estate" in which it owns only the mineral rights and plaintiffs own the surface rights of the Cold/Hot Springs allotment.  After a careful review of all the briefs filed by the parties, I have determined that the defendants' motion to dismiss should be denied and the plaintiff's motion for summary judgment should be granted.

We begin with the basic principle that public lands must be conveyed expressly by Congress and that no such conveyance can be implied.  United States v. Union Pac. R.R. Co., 353 U.S. 112, 116 (1957); Albrecht v. United States, 831 F.2d 196, 198 (10th Cir. 1987).  The United States retains and manages National Forest lands under Article IV, Section 3, Clause 2 of the Constitution, which gives Congress the power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."  The Supreme Court has given these words an expansive interpretation, observing that "the power over the public land thus entrusted to Congress is without limitations."  Kleppe v. New Mexico, 426 U.S. 529, 539 (1976) (quoting United States v. County of San Francisco, 310 U.S. 16, 29 (1940)).

The Organic Administration Act of 1897, 16 U.S.C. § 473 et seq., provides that Congress

3

may set aside public land as National Forests.  In 1906, the Secretary of Agriculture issued

regulations requiring that permits be issued to those who wished to use National Forest lands for

grazing.  United States v. Grimaud, 220 U.S. 506, 509 (1911).  The Supreme Court upheld those

regulations a few years later.  Grimaud, 220 U.S. at 521-23; Light v. United States, 220 U.S. 523

(1911).  Nor does the current Code of Federal Regulations convey any title to the Cold/Hot

Springs allotment to the defendants.  Rather, an "allotment" is defined merely as "a designated

area of land available for livestock grazing."  36 C.F.R. § 222.1(b)(1).

The defendants cite various cases and statutes relating to homestead and preemption rights

of settlers to support their argument that Congress implicitly created a "split estate" in which

surface rights to grazing allotments were granted to settlers, including the defendants'

predecessors in interest, while the government retained the mineral rights in those lands.

However, the defendants' reliance on these cases and statutes is misplaced.  First, the authorities

cited by the defendants do not hold that settlers acquired a property right or a split estate in the

grazing allotments they occupied.  Further,  those authorities do not convey any right to the

defendants in the Cold/Hot Springs allotment that is superior to that of the United States.

Second, defendants' argument is contrary to the established principle that a conveyance of public

lands must be expressly made by Congress.  Third, as the plaintiff correctly points out, the

defendants do not explain how the homestead laws they cite, which expressly limited homestead

claims to between 160 and 640 acres of land, granted their predecessors  title to the "surface

estate" of the thousands of acres that comprise the Cold/Hot Springs allotment.

Finally, the defendants erroneously rely upon the Taylor Grazing Act.  The Act applies

only to public lands "which are not in national forests . . ."  43 U.S.C. § 315.  Even if the Act did

apply to the Cold/Hot springs allotment, it would not avail the defendants because holders of Taylor Grazing Act permits do not have any interest in the land that is superior to that of the United States.  Holland Livestock Ranch v. United States, 655 F.2d 1002, 1005 (9th Cir. 1981); McNeil v. Seaton, 281 F.2d 931, 934 (D.C. Cir. 1960).  There is no legal basis for defendants' argument that they hold title to the "surface estate" of the Cold/Hot Springs allotment.  I find that the defendants have no legal title to the Cold/Hot Springs allotment and that their continued grazing of cattle upon the Cold/Hot Springs allotment within the Gila National Forest without a permit constitutes a trespass.  The plaintiff's motion for summary judgment therefore should be granted.

The only issue that remains is the viability of the defendants' counterclaim against the plaintiff.  The United States is generally immune from suit unless it has consented to suit or Congress has waived the United States' sovereign immunity.  Dalehite v. United States, 346 U.S. 15, 30-31 (1953); United States v. Sherwood, 312 U.S. 584, 586 (1941).  Such a waiver for contract claims is found in the Tucker Act, which is codified at 28 U.S.C. §§ 1346( a), 1491 (1988).  The Tucker Act grants the United States Court of Federal Claims (previously Claims Court) jurisdiction over non-tort claims against the United States and gives the district courts concurrent jurisdiction over claims that do not exceed $10,000.  28 U.S.C. § 1346(a)(2).  The Tenth Circuit Court of Appeals has held that the Tucker Act vests exclusive jurisdiction in the Court of Federal Claims over claims that exceed $10, 000.  New Mexico v. Regan, 745 F.2d 1318, 1322 (10th Cir. 1984), cert. denied sub nom New Mexico v. Baker, 471 U.S. 1065 (1985). E.g., Colorado Dep't of Highways v. United States Dep't of Transp., 840 F.2d 753, 755 ( 10th Cir. 1988); Amalgamated Sugar Co. v. Bergland, 664 F.2d 818, 823 ( 10th Cir. 1981).  The

district court has concurrent jurisdiction over only those claims for damages of $10,000 or less.

Similarly, counterclaims against the United States that exceed $10, 000 must be heard in the Court of Federal Claims.  United States v. 40.60 Acres of Land, 483 F.2d 927 (9th Cir. 1973). Defendants' counterclaim seeks damages in excess of $670,500.00 plus other unenumerated economic losses as well as injunctive relief against the plaintiff.  Because this far exceeds the amount stated in the Tucker Act, this Court has no jurisdiction.

Defendants' reliance on FDIC v. Hulsey, 22 F.3d 1472 (10th Cir. 1994) is misplaced.  In Hulsey, the Tenth Circuit noted that "absent a specific waiver of sovereign immunity, contract claims against an agency of the United States government must be brought in the Claims Court ... if the claims seek monetary relief in excess of $10,000."  Id. at 1480.   However, the court also acknowledged that Congress has sometimes waived that immunity by writing "sue and be sued" clauses into an agency's enabling legislation.  Id.  The Hulsey court ultimately found that the district court did have jurisdiction over the defendant's counterclaim because the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) contains a clause waiving sovereign immunity for claims against the FDIC.  Id.  The defendants point to no such provision which waives sovereign immunity for suits against the Forest Service.  Thus, I conclude that this Court lacks jurisdiction over defendants' counterclaims unless defendants stipulate that their claims will not exceed $10,000.

Therefore, it is ORDERED that:

(1)     Plaintiff's Motion to Dismiss Counterclaim for Lack of Jurisdiction [Doc. No. 10]
           is GRANTED and defendants' counterclaim is DISMISSED WITHOUT
           PREJUDICE;

(2)     Defendants' Motion to Dismiss [Doc. No. 14] is DENIED;

(3)     Plaintiff's Motion for Summary Judgment [Doc. No. 17] is GRANTED IN PART;

(on the issue of liability for trespass); and

(4)     Trial on the issue of damages is set for March 5, 1998 at 9:00 a.m.


UNITED  STATES  DISTRICT  JUDGE